IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANDREW R. CLINE, TRACY L. CLINE, | ) CASE NO. 4:22-CV-01435-CEH |
| | ) |
| Plaintiffs, | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| v. | ) |
| | ) |
| CITY OF EAST LIVERPOOL, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER GRANTING DEFENDANT** |
| Defendant, | ) **CITY OF EAST LIVERPOOL'S** |
| | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT** |

## I.   Introduction

This matter is before the Court pursuant to City of East Liverpool's ("Defendant") motion for summary judgment, filed August 29, 2023. (ECF No. 34). For the reasons explained within, the Court GRANTS Defendant's motion.

## II.   Relevant Background

In 2008 or 2009, Plaintiffs Andrew Cline ("Andrew") and Tracy Cline ("Tracy") (together "Plaintiffs") purchased property at 653 Walnut Street in East Liverpool, Ohio ("Property"). (December 16, 2020 Deposition of Andrew Cline ("Andrew 2020 Depo"), ECF No. 36 at 5). The Property houses Andrew's two businesses, Andy's Tire and Auto, which operates out of a garage bay, and East Liverpool Auto Parts & Supply, which operates out of a connected store front. (*Id*. at 9-10). The Property is located on an area of lower elevation on Walnut Street and the parking area and garage bay are at the lowest elevation. (*Id*. at 22-23).

In approximately 2012, a storm inlet basin in front of the Property was filled in and removed. (*Id*. at 44-45). Later, in 2014, Walnut Street was repaved and the paving went "over the

1

apron" to the driveway to the Property. (*Id.* at 22-23, 44). A second inlet basin was removed due to the repaving. (Deposition of Michael Mercer ("Mercer Depo"), ECF No. 38 at 27). Andrew immediately noticed an increase in rainwater on the Property following the removal of each inlet basin. (Andrew 2020 Depo at 49).

On July 6, 2018, Plaintiffs experienced flooding on the Property, with water coming into the parking lot, garage bays, and storefront. (Andrew 2020 Depo at 76, 86-87; January 8, 2021 Deposition of Tracy Cline ("Tracy 2021 Depo"), ECF No. 37 at 12, 15). The water receded later in the day. (Tracy 2021 Depo at 22).

In 2018 or 2019, the inlet basins were reopened in an attempt to alleviate flooding issues. (Andrew 2020 Depo at 45-47). Since the July 6, 2018 flooding event, while there have been instances of standing water in the parking lot, there have not been any additional occurrences of water entering the building. (March 6, 2023 Deposition of Andrew Cline ("Andrew 2023 Depo"), ECF No. 39 at 34-35).

Defendant's expert, Michael Menoes, opined that "[t]he water runoff to the Property is the result of the natural flow of water to the Property due to its location at the bottom of a steep hill." (Affidavit of Michael Menoes ("Menoes Affidavit"), ECF No. 34-3 at 1). According to Menoes, Defendant's "storm water system has an adequate design and capacity" and "cannot and is not required to capture all water flowing down the public streets and sidewalks." (*Id.* at 1-2).

### III.   Procedural History

Plaintiffs filed a complaint in the Columbiana County Court of Common Pleas on July 15, 2022. (ECF No. 1-1). The complaint contained one claim for inverse condemnation, alleging that the flooding rendered the building "structurally compromised to the point where its continued occupancy and use for the two businesses operated by Plaintiffs will not be possible,

2

and thereby constitutes a taking of the property without just compensation." (*Id.* at PageID #: 6). It also contained one claim for a violation of the Fifth and Fourteenth Amendments to the United States Constitution. (*Id.*). Asserting federal question jurisdiction, Defendant removed the case to the United States District Court for the Northern District of Ohio on August 11, 2022. (ECF No. 1). Defendant filed an answer on September 8, 2022, denying Plaintiffs' allegations and asserting its defenses. (ECF No. 6). The parties consented to magistrate judge jurisdiction on November 2, 2022. (ECF Nos. 10, 11).

Defendant filed its motion for summary judgment on August 29, 2023. (ECF No. 34). After missing the initial deadline to respond, Plaintiffs sought leave to file a response. (ECF Nos. 41, 42).[1] The Court granted Plaintiffs' request for leave during a November 1, 2023 status conference and Plaintiffs filed their response the same day. (ECF No. 44). Defendant replied on November 13, 2023, the deadline set by the Court. (ECF No. 45).

### IV. Legal Standard

To be entitled to summary judgment, the moving party must demonstrate that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all facts in the light most favorable to the non-moving party. *Lindsey v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court must determine "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252. Importantly, the Court may not "weigh the evidence and determine the truth of the matter." *Id.* at 249.

---

[1] The Court denied Plaintiff's initial motion for leave based on their failure to show good cause and excusable neglect as required by Federal Rule of Civil Procedure 6(b).

3

The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the non-movant to establish a "genuine issue" for trial via "specific facts." *Id*. at 324. The Court is required to enter summary judgment against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

V.     Discussion

Defendant argues it is entitled to summary judgment because Plaintiffs' inverse condemnation and Fourteenth Amendment claims are not viable causes of action; their claims are barred by the applicable statute of limitations; their claims fail on the merits; and Defendant is entitled to immunity on the inverse condemnation claim pursuant to Ohio Revised Code Chapter 2744. (ECF No. 34-1 at 1). The Court will address Defendant's argument concerning the statute of limitations first as the Court finds such dispositive.

Defendant argues that because it is a political subdivision pursuant to Ohio Revised Code § 2744.01(F) and because Plaintiffs seek to recover damages on their claims, both the state and federal claims against it are subject to the two-year statute of limitations set forth in Ohio Revised Code § 2744.04(A). (ECF No. 34-1 at 8). Defendant argues that, at the latest, Plaintiffs' claims accrued as of the July 6, 2018 flooding event because "Andrew testified that he was immediately aware of increased water flow on the Property that resulted from the 2012 removal and 2014 installation of an inlet basin;" he also testified that "he was aware of the alleged flooding caused by the 2014 street repaving after the repaving project was completed;" and Plaintiffs "have experienced no additional flooding events since July 6, 2018." (*Id*. at 9-11). Defendant further argues that "Plaintiffs' claims are predicated upon construction of the storm

4

water system/roads and a single flooding event" and "[b]ecause the claims arise from the alleged ill effects of these discrete, permanent, and complete actions – of which Plaintiffs were aware – the applicable two-year statute of limitations is not tolled by the continuing violation rule." (*Id.* at 9). Thus, because all claims accrued on or before July 6, 2018, and Plaintiffs did not file their complaint until July 15, 2022, Defendant asserts the claims are barred by the statute of limitations.

In response, Plaintiffs do not dispute that their claims are subject to the two-year statute of limitations. Rather, they argue that the continuing violation doctrine "remains applicable in situations where the governmental entity has continued to exercise control even after a project's completion." (ECF No. 44 at 6). Relying on *State ex rel. Doner v. Zody*, 958 N.E.2d 1241 (Ohio 2011), Plaintiffs argue that "the City continues to this day to be responsible, and solely responsible for, the maintaining of [the stormwater management] system" and such control "should toll the running of the applicable statute of limitations." (*Id.* at 6-7).

Defendant replies that "Plaintiffs' arguments that evidence of damages from an alleged history of water intrusion demonstrates a continuing violation is contrary to established and binding Ohio case law." (ECF No. 45 at 6). Relying on *Sexton v. Mason*, 883 N.E.2d 1013 (Ohio 2008), Defendant argues that "a continuing violation is determined by ongoing tortious activity rather than claimed ongoing injury or damages." (*Id.*). Defendant asserts that "*Doner* is inapplicable because, unlike the instant case, it involves a governmental entity's repeated decisions to raise flood gates, releasing water from an upstream dam located on governmental property that flooded downstream property." (*Id.*). Because "Plaintiffs' claims are predicated upon discrete completed acts at the Property of which Plaintiffs had knowledge," Defendant

asserts that the continuing violation doctrine is inapplicable and Plaintiffs' claims are barred. (*Id*. at 8).

Because Plaintiffs do not dispute that their claims are subject to the two-year statute of limitations, the relevant question before the Court is when the statute of limitations began to run. The "standard rule" is that the statute of limitations "begins to run when a 'plaintiff has a complete and present cause of action.'" *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023) (quoting *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). "A complete cause of action arises 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id*. Here, the Court agrees with Defendant that based on Andrew's testimony that he noticed an immediate increase in water in 2012 and 2014 as well as the flooding on July 6, 2018, Plaintiffs knew of their injury no later than July 6, 2018. Accordingly, the statute of limitations began to run on that date.

Plaintiffs argue the continuing violation doctrine applies to toll the statute of limitations because Defendant continued to maintain control of the stormwater system. The Court disagrees. In the Sixth Circuit, "a 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009). Plaintiffs' argument that Defendant maintains control of the stormwater system does not point to any specific, wrongful conduct that if ceased would have prevented further injury. Rather, Plaintiffs simply seem to argue that because Defendant had control of the stormwater system, it should have done more to prevent flooding but "[p]assive inaction . . . does not support a continuing violation theory." *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999).

6

Because Plaintiffs have failed to point to continuing wrongful conduct by Defendant that if ceased would prevent further injury, the continuing violation doctrine does not apply. As such, the two-year statute of limitations expired on July 6, 2020, two years before the complaint at issue here was filed. Thus, Plaintiffs' claims are untimely and dismissal is proper.

Plaintiffs' reliance on the Ohio Supreme Court's decision in *Doner* does not alter this conclusion. *Doner* addressed the Ohio Department of Natural Resources' ("ODNR") authority over a man-made lake and maintenance of the lake's water levels through a spillway on the western bank. 958 N.E.2d at 1239. ODNR replaced the spillway in 1997, at which point it "considered the lake to be self-regulating," and did not adjust the lake level afterwards, despite having the capability to do so. *Id.* at 1239-41. In 2009, landowners of surrounding property filed an action to compel ODNR to initiate appropriation proceedings for the taking of their property because "following ODNR's 1997 replacement of the western spillway and its concomitant decision to abandon lake-level management, their properties flooded more frequently, over a larger area, for longer periods of time and with greater resulting damage." *Id.* at 1241. The court rejected ODNR's argument that the claims were barred by the applicable statute of limitations, finding that "when an act carried out on the actor's own land causes continuing damage to another's property and the actor's conduct or retention of control is of a continuing nature, the statute of limitations is tolled." *Id.* at 1245. The Court noted that while ODNR constructed the new spillway in 1997, it "continued to exercise control over both the spillway *and the lake level* by making decisions not to draw down the water either annually or before heavy rains." *Id.* (emphasis added).

*Doner* is distinguishable from the case here for two reasons. First, in *Doner*, not only did ODNR have control of the spillway, but also the flooding was caused by ODNR's decision not to

7

further regulate the lake levels. Here, however, Defendant's expert opined that "[t]he water runoff to the Property is the result of the natural flow of water to the Property due to its location at the bottom of a steep hill." (Menoes Affidavit at 1). Plaintiffs have failed to put forth any evidence to rebut this opinion such that there is no evidence before the Court to support that Defendant's control of the stormwater system caused the flooding to occur. Second, in *Doner*, the landowners continued to suffer "flooding on a frequent basis since the new spillway was built and lake-level management was discontinued, with many experiencing flooding every year and in some years on multiple occasions." 958 N.E.2d at 1241. But Plaintiffs here concede that no further flooding has occurred since July 6, 2018. (Andrew 2023 Depo at 34-35). Therefore, even assuming Defendant's control of the stormwater system caused the July 6, 2018 flooding, Plaintiffs' fail to demonstrate the type of flooding on a frequent basis on multiple occasions that was present in *Doner*. Thus, there has been no continuing violation to toll the statute of limitations.

      This case further differs from *Doner* because the court there found the claims timely even without applying the continuing violation doctrine. As noted in *Doner*, a cause of action against the government accrues when "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." 958 N.E.2d at 1245-46. In *Doner*, ODNR's expert stated that "[s]tandard engineering practice calls for at least 10 and preferably 15 years or more of record in order to produce meaningful hydrologic statistics." *Id.* at 1246. Based on this statement, the court found the landowners' claims timely because, even if "all the events that fixed [ODNR's] liability to downstream landowners . . . were completed in 1997, when the new spillway was built," "[t]he ten to 15 years necessary to gather data to prove a taking had not yet passed" such that the claims had not accrued until much later.

8

*Id*. Here, Plaintiffs do not present any argument to support that they were unaware of the alleged taking such that their claims did not accrue until a later date.

Because Plaintiffs failed to bring their claims until after the two-year statute of limitations expired, summary judgment is appropriate. Having concluded such, the Court declines to address Defendant's remaining arguments.

## VI. Conclusion

Accordingly, the Court GRANTS Defendant's motion for summary judgment and DISMISSES Plaintiffs' claims against Defendant.

Dated: December 1, 2023

                                                *s/ Carmen E. Henderson*
                                                CARMEN E. HENDERSON
                                                U.S. MAGISTRATE JUDGE